# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CEAZAR ANTWON ABERNATHY,

        Petitioner,               Case No. 16-cv-14212
                                          Hon. Matthew F. Leitman

v.

SHERMAN CAMPBELL,

        Respondent.
_____/

## ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING A CERTIFICATE OF APPEALABLITY, AND (3) GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

    Petitioner Ceazar Antwon Abernathy is a state prisoner in the custody of the Michigan Department of Corrections. He is serving a sentence of ten to twenty years for a conviction of second-degree home invasion, Mich. Comp. Laws § 750.110a(3), imposed following a jury trial in Saginaw County Circuit Court.

    On November 29, 2016, Abernathy filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) He seeks habeas relief on the ground that he is actually innocent. The Court has carefully reviewed the petition and concludes that it does not state a claim upon which relief may be granted. Therefore, the Court **DENIES** the petition. The Court further **DENIES**

Abernathy a certificate of appealability. However, the Court **GRANTS** Abernathy permission to appeal *in forma pauperis*.

# I

## A

The Michigan Court of Appeals described the facts underlying Abernathy's conviction as follows:

> On September 2, 2010, [Abernathy] approached two homes located near each other, rang the doorbells, and asked if a "Melanie" or "Melodie" lived at the home. Each time, after being told that no one with that name lived there, [Abernathy] entered the passenger side of a tan-colored Cadillac and drove away. Both homeowners contacted the local police because the events seemed suspicious. Shortly thereafter, the Cadillac was located in the driveway of a home a couple miles away. The first responding officer noticed that the front door of the house had been kicked in and firearms were lying on the porch. No one was in the house, but two people were spotted in the cornfield behind the house. Shortly thereafter, one suspect [a man named Marquell Hulett] was located and arrested. The bottom of his shoe matched the impression on the front door. Another officer waited for [Abernathy] to exit the cornfield and, when he did, he was arrested. Neither suspect had a weapon. Inside the home, jewelry and other items had been piled on a bed. A gun cabinet in the bedroom had been pried open with a knife. The eight firearms had been removed and placed on the front porch of the home; none were missing.

*People v. Abernathy*, 2012 WL 6913916, at *1 (Mich. Ct. App. Nov. 20, 2012).

**B**

Abernathy and Hulett were each charged with conspiracy to commit first-degree home invasion, Mich. Comp. Laws §§ 750.157a, 750.110a(2); and second-degree home invasion, Mich. Comp. Laws § 750.111a(3). The state trial court granted a motion for separate trials, and Abernathy came to trial first. The jury convicted him on both charges, and the state court sentenced him to 216 months to 360 months imprisonment. (*See* Sentencing Tr., ECF No. 10-13, PageID.361.)

Following Abernathy's conviction, Hulett made a plea bargain and entered guilty pleas to charges of second-degree home invasion and felony-firearm. He was sentenced to two years in prison for the felony firearm offense and ten months on a tether on the second-degree home invasion charge. (*See* ECF No. 10-19, PageID.461.)

Abernathy appealed his conviction to the Michigan Court of Appeals. In his appeal, he raised only a single issue: that there was insufficient evidence to support his conviction for conspiracy to commit first-degree home invasion. The Michigan Court of Appeals agreed, vacated that conviction, and remanded for resentencing on the second degree home invasion conviction. *Abernathy*, 2012 WL 6913916, at *2. The trial court resentenced Abernathy to ten to twenty years imprisonment.

**C**

In August 2014, Abernathy filed a motion for relief from judgment in the state trial court. He argued that newly-discovered evidence – a letter from Hulett in which Hulett said that he alone committed the home invasion and that Abernathy did not participate in the home invasion – warranted a new trial. The trial court denied the motion on the merits (in an Opinion and Order described in more detail below). (*See* 12/1/2014 Op. and Order, ECF No. 10-17.) Abernathy sought leave to appeal that ruling, and the Michigan Court of Appeals and Michigan Supreme Court both denied leave. *See People v. Abernathy*, No. 327523 (Mich. Ct. App. Aug. 26, 2015) (ECF No. 10-19); *People v. Abernathy*, 880 N.W.2d 560 (Mich. 2016).

Abernathy then filed this habeas corpus petition. He seeks relief on the ground that new, reliable evidence – *i.e.*, Hulett's letter -- clearly demonstrates that he is actually innocent of the crime for which he stands convicted.

**II**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

> adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

### III

The state trial court adjudicated Abernathy's claim of actual innocence based on newly-discovered evidence on the merits:

> The alleged newly discovered evidence that Defendant relies on is a December 16, 2013 handwritten letter signed by his Co-Defendant, Hulett. In his letter, Hulett states in relevant part:
>
> I would like to step up and let the courts know that my co-defendant Ceazar Abernathy did not commit the 2nd degree home invasion he was convicted of. As evidence confirms, I "Marquell Hulett" kicked the door at 1110 N. Beyer Road on September 2, 2010. Ceazar Abernathy had no knowledge of my

5

intention to invade that home. I entered the home of 1110 N. Beyer Rd. on September 2, 2010 without permission, and upon enter [sic] I noticed a gun cabinet .... I grabbed all the guns in my arms and preceeded [sic] out the front door to my car. I first noticed Ceazar Abernathy was not in the car when I got to the door. Once I was on the porch I notice [sic] the headlights of a blue state police car pulling behind my cadillac [sic]. I slowly dropped the guns onto the porch and backed into the house. I pushed the door closed and ran out the back door into the woods. After running awhile I noticed Ceazar Abernathy sitting in the woods. He approached me angry, stating how he was on parole and I knew he was in the car so I shouldn't have brought him or even did it .... I didn't see Ceazar again until we were both at the station being interrogated. We got to the county jail and after arraignment, was [sic] sent to the same cell. In the cell we got into it because it was my fault that he may have been on his way back to prison .... I was so scared knowing I could go to prison for 20 years that there was no way I was going to confess to anything .... I'm coming now to confess that I did this 2nd degree home invasion by myself. Ceazar is in prison for a crime he did not commit nor had any knowledge of. When I picked him up that morning he was high off promethezine [sic] and codine [sic] which is why I believe he slept so hard. I was supposed to be dropping him off to a female friend of his ....

(See letter dated December 16, 2013).

In order to qualify for a new trial based on newly discovered evidence, the defendant must satisfy the following four-part test: (1) "the evidence itself, not merely its materiality, was newly discovered'; (2) 'the newly discovered evidence was not cumulative'; (3) 'the party could not, using reasonable diligence, have discovered and produced the evidence at trial'; and (4) the

evidence makes a different result probable on retrial." *People v Cress*, 468 Mich. 678, 692 (2003), citing *People v Johnson*, 451 Mich. 115, 118, n. 6 (1996).

In *People v Terrell*, 289 Mich. App. 553 (2010), the Court of Appeals examined, as a matter of first impression, whether a codefendant's posttrial or postconviction testimony qualifies as newly discovered evidence sufficient to warrant a new trial. In that case, the defendant and his codefendant were tried jointly for the nonfatal shooting of another man. The defendant was convicted of assault with intent to murder and related weapons offenses. The codefendant invoked his Fifth Amendment privilege against self-incrimination and was acquitted. *Id.*, pp 555-557. The defendant subsequently moved for a new trial on the basis of newly discovered evidence in the form of testimony from his codefendant and another witness. After an evidentiary hearing, the trial court ruled that the testimony of the other witness was cumulative and therefore did not warrant a new trial. However, the trial court granted a new trial on the basis of the codefendant's testimony that the victim was also armed and that another suspect was solely responsible for shooting the victim. Id., p 557.

* * *

… In deciding the issue, the *Terrell* Court adopted the approach of the majority of federal circuits, to hold that "a codefendant's posttrial or postconviction willingness to provide exculpatory testimony constitutes newly available evidence, not newly discovered evidence, and that if the defendant knew or should have known of the evidence before or during trial, the evidence was not discovered after trial and a new trial is not warranted[.]" *Id.*, p 561.

* * *

The *Terrell* Court then considered whether the defendant in that case knew or should have known that his

7

codefendant could offer material testimony regarding the defendant's role in the charged offenses at the time of his trial. *Id.*, p 569. Examining the trial court's record, the *Terrell* Court found that the defendant knew or should have known that his codefendant could have offered material exculpatory evidence[.]

* * *

Because the defendant knew or should have known that his codefendant could offer material exculpatory testimony regarding the defendant's role in the charged crimes, the *Terrell* Court determined that the defendant had failed to establish the first element of the *Cress* test for a new trial, *i.e.*, that the evidence relied on was newly discovered. See *id*, pp 560 & 570. Accordingly, the Court of Appeals reversed the trial court's order granting the defendant a new trial.

In the instant case, Defendant argues that his CoDefendant's posttrial statements set forth in the December 16, 2013 letter, constitute newly discovered evidence to satisfy the first prong of the *Cress* test because these statements were "unavailable" to Defendant and his attorney at the time of his trial. However, under *Terrell*, supra, a codefendant's posttrial or postconviction willingness to provide exculpatory testimony does not qualify as newly discovered evidence sufficient to warrant a new trial when Defendant knew or should have known of this evidence before or during the original trial. As explained in Terrell, a codefendant's willingness to testify after a trial does not automatically render the testimony newly discovered because "one does not 'discover' evidence after trial that one was aware of prior to trial. To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding." *See id.*, p 568 (Internal citations omitted; emphasis in original). Thus, the relevant inquiry is whether Defendant knew or should have known, prior to his trial that Hulett could offer

material testimony regarding Defendant's role in the charged offenses. *See Id.*, p 569.

Unlike the codefendant, in *Terrell*, Hulett did not formally invoke his Fifth Amendment privilege to avoid testifying at Defendant's trial. Rather, Hulett claims that he did not come forward to offer exculpatory testimony for Defendant previously because "I was so scared knowing that I could go to prison for 20 years that there was no way I was going to confess to anything." (See letter dated December 15, [sic] 2013). Despite this distinction, the legal and policy considerations underpinning the Court of Appeals' decision in *Terrell* also exist in this case, namely the inherent unreliability of testimony from a codefendant who has already been convicted and sentenced. *People v Cornwell*, unpublished opinion per curiam of the Court of Appeals issued May 1, 2012 (Docket No. 301660), 2012 WL 1521387, p *5 citing *Terrell*, supra, p 569. Hence, the *Terrell* Court's decision relative to what type of testimony constitutes newly available evidence, and not newly discovered evidence, also applies in this case. *Cornwell*, supra.

As in *Terrell*, in this case, the Court finds that Defendant knew or should have known that his Co-Defendant could have offered material testimony regarding Defendant's role in the charged crimes at the time of trial. In his Motion, Defendant avers that Hulett first spoke with defense counsel concerning the case in late 2013, more than two years after Defendant's trial concluded. However, Hulett and Defendant have both admitted that they were together in Hulett's car on the morning of the home invasion. Also, in his December 16, 2013 letter, Hulett claims that immediately after the home invasion, Defendant angrily approached him in the nearby woods and stated "I knew he was on parole and how I knew he was in the car so I shouldn't have brought him or even did it." (See letter dated December 16, 2013). Hulett also alleges that, after their arrests, he and Defendant "got into it" at the Saginaw County Jail because "it was my fault

> that he may have been on his way back to prison." (See letter dated December 16, 2013). If Hulett's posttrial statements are to be believed, then Defendant certainly knew at the time of his trial that Hulett could have offered material exculpatory testimony. Under these circumstances, Hulett's posttrial statements constitute newly available evidence, not newly discovered evidence, and do not satisfy the first prong of the four-part Cress test for a new trial.
>
> Further, even if Defendant could show that Hulett's posttrial statements were newly discovered evidence, his request for a new trial would still fail under the second prong of the *Cress* test because Hulett's statements are cumulative of Defendant's statements to Trooper Verga which were presented to the jury during trial. Finally, Hulett's posttrial statements would not make a different result probable on retrial given the trial testimony of Officer Fulmer and the other circumstantial evidence which tended to show that Defendant and Hulett both planned and participated in the home invasion. For all of these reasons, therefore, the Court will deny Defendant's Motion for Relief from Judgment.

(ECF No. 10-17, PageID.401-409.)

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of Supreme Court precedent. The Supreme Court has not ruled that a showing of actual innocence requires the setting aside of a lawfully-obtained conviction. Thus, claims of actual innocence based on newly-discovered evidence have not yet "been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). And the Sixth Circuit

has "repeatedly indicated that such claims are not cognizable on habeas." *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007). *See also Thomas v. Perry*, 553 F. App'x 485, 486 (6th Cir. 2014) (As the district court properly held, Thomas's freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review"); *Wright v. Stegall*, 247 F. App'x 709, 712 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent."); *Haynie v. Buchanan*, 2019 WL 5790995, at *2 (6th Cir. Sept. 24, 2019) ("[T]o the extent that Haynie also claims that he is actually innocent, reasonable jurists would not debate the district court's conclusion that this claim is not cognizable in federal habeas proceedings"). Consequently, Abernathy is not entitled to habeas relief based upon his claim of actual innocence.

## IV

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (a "COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that relief should be denied. Therefore, the Court denies Abernathy a certificate of appealability.

The standard for granting an application for leave to proceed *in forma pauperis* ("IFP") on appeal is a lower standard than the standard for COAs. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002) (citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)). While a COA may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *See id.* at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F.Supp.2d at 765. The Court finds that an appeal could be taken in good faith and Abernathy may proceed *in forma pauperis* on appeal. *See id.*

## V

For the reasons set forth above, the Court **DENIES** Abernathy's petition for writ of habeas corpus (ECF No. 1.)

The Court further denies Abernathy a certificate of appealability, but it grants him leave to appeal *in forma pauperis*.

**IT IS SO ORDERED**.

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated: February 3, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 3, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda  
Case Manager  
(810) 341-9764